CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff
366 Main Street
Port Washington, New York 11050
Tel:   (516) 767-3600 / Fax:  (516) 767-3605
Eugene J. O'Connor (EO-9925)
Timothy Semenoro (TS-6847)
Andrew J. Warner (AW-5534)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

S.M.E. SHIPPING PTE LTD.

                                        Plaintiff,

                                                                    08  CV  _____

                v.
                                                                    VERIFIED COMPLAINT

PT TIRTA KERTA ABADI,

                                        Defendant.
-----------------------------------------------------------------X

        Plaintiff S.M.E. SHIPPING PTE LTD (hereinafter "SME") by its attorneys, as and for its

Verified Complaint against the Defendant PT TIRTA KERTA ABADI (hereinafter "TKA"),

alleges upon information and belief as follows:

## JURISDICTION

1.        This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure, and also falls under this Court's admiralty and maritime

jurisdiction pursuant to 28 U.S.C. § 1333.

## THE PARTIES

2.        At all times material hereto, Plaintiff SME was and still is a foreign business

entity duly organized and existing pursuant to the laws of a foreign country with an office and

principal place of business in Singapore.

3.        The plaintiff is engaged in business as, among other things, a charterer of ocean-

going vessels by which cargo is transported in exchange for payments of hire or freight.

4.    At all times material hereto, Defendant TKA was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country with offices at Jalan Enggano No. 15 Bok C2, Tanjung Priok, Jakarta 14310, Indonesia.

5.    The defendant is an owner and/or disponent owner of ocean-going vessels.

## FIRST CAUSE OF ACTION
## FOR BREACH OF MARITIME CONTRACT

6.    On or about November 24, 2007, SME, as charterer, entered into a maritime contract with TKA, as owner and/or disponent owner, whereby TKA's vessel, the MV FOKUS, was hired to carry various cargoes for a period of about 1 year with the option to extend the time by another year at charterer's option.

7.    This contract between SME and TKA is a maritime contract and made out on a BIMCO Uniform Time-Charter form, dated November 24, 2007, and annexed Rider Clauses, also dated November 24, 2007 (hereinafter collectively referred to as the "maritime contract").

8.    Pursuant to the terms and conditions of this maritime contract, the parties agreed to, among other things, a hire rate, that any drydocking period for the repair of the vessel would be excluded from the contract period and place the vessel off-hire, the owners of the vessel guaranteed that the vessel seaworthy and her engines would work efficiently during the course of the contract, and that all disputes arising under this maritime contract would be subject to English Law and arbitrated in Singapore.

9.    Although the subject vessel did load, transport and discharge cargoes at certain ports, and SME paid TKA the requisite charter hire in accordance with the terms of the maritime contract, said vessel suffered main engine problems in May of 2008, after having loaded a cargo of 5,200 tons of sugar at Chennai, India, while bound for Chittagong, Bangladesh.

10.     The vessel took refuge at the port of Paradip, India, for main engine repairs, and the vessel was off-hire for these repairs pursuant to the terms of the maritime contract.

11.     In diverting to Paradip, the vessel used all of her bunkers, previously paid for by charterer SME under the terms of the maritime contract and that were supposed to be used to facilitate the voyage of the vessel and cargo to Chittagong.

12.     During this off-hire period for vessel repairs, which lasted from May 14, 2008 until June 17, 2008, TKA asked SME to arrange for the supply of additional fuel and water to the vessel which SME was not obliged to do under the terms of the maritime contract. However, in an effort to assist the voyage, SME supplied the necessary fuel and water to the vessel with the reservation that any of the resulting expenses would be for owners TKA's account.

13.     From the beginning of the time charter period in late 2007 until July 2008, SME made several charter hire payments and other voluntary advances as requested for the benefit and account of TKA, as owners, to third parties for services rendered to the subject vessel.

14.     By the end of July 2008, there was a balance of payments due and owing SME from TKA in the amount of US $198,803. Although duly demanded, TKA, in breach of the maritime contract, has failed to pay this amount which is now due and owing.

15.     Since July 25, 2008, the subject vessel stopped sending position reports, the owners TKA have refused to make the vessel available, and US $130,000 worth of fuel oil that was supplied by the charterer SME under the maritime contract remains aboard the subject vessel. Withdrawing the vessel from service without cause and keeping the fuel oil bunkers, supplied by and ultimately the property of the charterer SME, is a breach of the maritime contract.

16.    In failing to pay the above amounts, TKA owes damages to SME in the aggregate amount of US $328,803, all in breach of the maritime contract.

## SECOND CAUSE OF ACTION
## FOR ANTICIPATORY BREACH OF MARITIME CONTRACT

17.    Plaintiff repeats, reiterates and realleges paragraphs 1 through 16 with the same force and effect as if fully set forth herein.

18.    As the subject vessel cannot be located and is no longer sailing at the direction of charterer SME as provided for under the maritime contract, it has been wrongfully withdrawn from the maritime contract by TKA. This non-performance by owners TKA and its vessel will result in additional damages to SME in breach of contract claims by sub-charterers and other interested third-parties.

19.    Under English law, SME has a cause of action against TKA for breach of contract because TKA has expressed and/or evidenced its clear intention not to fulfill its obligations under the maritime contract.

20.    As near as can now be estimated, SME expects claims and losses in the amount of US $400,000 for the non-performance of five (5) voyages that are already sub-contracted for with a third-party for the transportation of cargoes of bagged rice between Kakinada, India, and Chittagong, Bangladesh; an additional US $150,000 for the non-performance of a previously sub-contracted voyage for the transportation of a cargo of logs from Rangoon, Myanmar, to Calcutta, India; and expected loss of profits over the duration of this two year maritime contract of US $500,000.

21.    In failing to pay the above amounts, TKA owes damages to SME in the aggregate amount of US $1,050,000, all in breach of the maritime contract.

4

## AWARDABLE INTEREST, FEES, AND COSTS

22.     As previously indicated above, the maritime contract provides that any disputes arising under said contract are subject to resolution by arbitration in Singapore, and to be determined under English Law, none of which is deemed waived, and, in accordance with the terms of the maritime contract, SME has or will commence an arbitration in Singapore.

23.     Furthermore, the award of fees, costs, and interest is allowed under English Law and is regularly awarded in maritime matters such as the subject dispute. The estimated allowable fees, costs, and interest for the arbitration of SME's claim against TKA is approximately US $350,000.00.

## PRAYER FOR RELIEF

24.     Notwithstanding the fact that the liability of TKA is subject to a determination by an arbitration panel in Singapore, there are now, or will be during the pendency of this action, certain assets, accounts, freights, hire payments, monies, charter hire, credits, effects, CHIPS credits, electronic fund transfers, payments for bunkers, goods or services, bills of lading, cargo, debts and the like belonging to or claimed by the Defendant within this District and held by various parties, as garnishees.

25.     Plaintiff believes that some of these assets, in bank accounts and/or as funds being transferred through intermediary banks, are located in this District in the possession of garnishees, including, American Express Bank, Ltd., Bank of America, Bank of India, Bank of New York, Barclays Bank, BNP Paribas, Citibank NA, Deutsche Bank, HSBC (USA), JP Morgan Chase Bank, Standard Chartered Bank, State Bank of India, UBS AG, Wachovia Bank, CHIPS, and possibly other banks or financial institutions located in New York.

26.    As set forth in the accompanying declaration of Andrew J. Warner, the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

27.    Because this Verified Complaint sets forth an *in personam* maritime claim against the Defendant and because the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the requirements for a Rule B attachment and garnishment are met and Plaintiff seeks the issuance of process of maritime attachment so that it may obtain security for its claims against the Defendant and/or *quasi in rem* jurisdiction over the property of the Defendant so that an eventual judgment and/or award can be satisfied.

28.    In addition to an attachment in the full amount of the claim as set forth above, Plaintiff also seeks an attachment over an additional sum to cover awardable attorneys' fees and costs which are recoverable pursuant to English Law in arbitration in Singapore.

29.    Plaintiff's aggregate claim against the Defendant amounts to US $1,728,803 which is comprised of the underlying claim of US $1,378,803 for damages plus estimated awardable interest, costs, and fees.

WHEREFORE, Plaintiff prays as follows:

A.    That the Defendant be summoned to appear and answer this Verified Complaint;

B.    That the Defendant not being found within this District, as set forth in the Declaration of Andrew J. Warner, then all of its assets, accounts, freights, monies, charter hire, credits, effects, payment for bunkers, goods or services, bills of lading, cargo and the like belonging to or claimed by the Defendant within this District up to the amount sued for herein be attached pursuant to Supplemental Rule B and to pay Plaintiff's damages;

C.      That this Court retain jurisdiction over this matter through the entry of a judgment either by this Court, and/or the an arbitration panel in Singapore, so that judgment may be entered in favor of Plaintiff for the amount of its claim with costs, fees and interest, i.e. US $1,728,803, and that a judgment of condemnation and sale be entered against the property arrested and attached herein in the amount of Plaintiff's claim, plus costs to be paid out of the proceeds thereof; and

D.      That Plaintiff has such other and further relief as the Court may determine to be just and proper under the circumstances.

Dated: Port Washington, New York
       August 22, 2008

                                CHALOS, O'CONNOR & DUFFY, LLP
                                Attorneys for Plaintiff

              By:

                                _____
                                Eugene J. O'Connor (EO-9925)
                                Timothy Semenoro (TS-6847)
                                Andrew J. Warner (AW-5534)
                                366 Main Street
                                Port Washington, New York 11050
                                Tel:  (516) 767-3600 / Fax:  (516) 767-3605

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600 / Fax:  (516) 767-3605
Eugene J. O'Connor (EO-9925)
Timothy Semenoro (TS-6847)
Andrew J. Warner (AW-5534)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
S.M.E. SHIPPING PTE LTD.

                    Plaintiff,

        v.

PT TIRTA KERTA ABADI,

                    Defendant.
-------------------------------------------------------------------X

08 CV _____

**VERIFICATION OF COMPLAINT**

Pursuant to 28 U.S.C. § 1746, ANDREW J. WARNER, Esq., declares under the penalty

of perjury:

1.     I am associated with the law firm of Chalos, O'Connor & Duffy, attorneys for the

Plaintiff S.M.E. SHIPPING PTE LTD. herein;

2.     I have read the foregoing complaint and knows the contents thereof; and

3.     I believe the matters to be true based on documents and information obtained

from employees and representatives of the Plaintiff through its underwriters and attorneys. The

reason that this verification was made by deponent and not by the Plaintiff is because Plaintiff is

a foreign corporation, whose officers are not in this district, and whose verification cannot be

obtained within the time constraints presented by the circumstances of this case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Port Washington, New York
August 22, 2008

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff

By:

Eugene J. O'Connor (EO-9925)
Timothy Semenoro (TS-6847)
Andrew J. Warner (AW-5534)
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600 / Fax:  (516) 767-3605

2